Manuel Joe CHAVEZ, Appellant,

v.

Fred R. DICKSON, Warden, California
State Prison at San Quentin, Cal-
ifornia, Appellee.

Clyde BATES, Appellant,

v.

Fred R. DICKSON, Warden, California
State Prison at San Quentin, Cal-
ifornia, Appellee.

Nos. 17532 and 17533.

United States Court of Appeals
Ninth Circuit.

March 22, 1962.

Rehearing Denied May 21, 1962.

Gladstein, Andersen, Leonard & Sibbett, by Richard Gladstein, Norman Leonard, San Francisco, Cal., for appellant Chavez.

Ruth Jacobs, San Francisco, Cal., for appellant Bates.

Stanley Mosk, Atty. Gen. for State of California, Arlo E. Smith, Chief Asst. Atty. Gen., for appellee.

Before HAMLEY and KOELSCH, Circuit Judges, and MURRAY, District Judge.

HAMLEY, Circuit Judge.

This is the second appeal in these habeas corpus proceedings. On the prior appeal we reversed orders of denial and remanded the causes for further proceedings. Chavez v. Dickson, 9 Cir., 280 F.2d 727. The further proceedings were had and the district court again denied the applications. The applicants, Manuel Joe Chavez and Clyde Bates, once more appeal and have filed joint briefs in this court.

Chavez and Bates, together with one Manuel Hernandez, were jointly tried before a jury in the Superior Court of the State of California in and for the County of Los Angeles, on indictments charging six counts of murder and one count of arson.[1] The charges resulted from an occurrence on April 4, 1957, when gasoline and lighted matches were thrown into a Los Angeles bar, causing the death of six persons.

All three were convicted of first degree murder on each of the murder counts, and were also all convicted on the arson count. The jury fixed the punishment of Chavez and Bates at death and that of Hernandez at life imprisonment.

Sentences of death were imposed on Chavez and Bates. Their convictions and sentences were upheld by the Supreme Court of California, People v. Chavez, 50 Cal.2d 778, 329 P.2d 907, and certiorari was denied, Chavez v. California, 358 U.S. 946, 79 S.Ct. 356, 3 L.Ed.2d 353; Bates v. California, 359 U.S. 993, 79 S.Ct. 1126, 3 L.Ed.2d 982. These habeas corpus proceedings were then instituted and were consolidated for disposition in the district court and this court.

On the prior appeal we rejected a number of contentions advanced by appellants, but found merit in two of their arguments. One of these had to do with the fact that, in the state court trial, John A. Tidyman, a police officer, was permitted to read two statements which were transcribed from tape recordings of conversations between Tidyman, another police officer, appellants and others.

One of these statements, herein called the Hernandez statement, was a transcription of a tape recorded conversation between these two officers and Her-

---

[1]. The latter count charged a violation of section 448a, Penal Code of California, characterizing the crime as "arson." Appellants contend that the crime was not arson within the meaning of section 189 of the Penal Code of California.

nandez. The other, herein called the Brenhaug statement, was a transcription of a tape recorded conversation between these two officers, the three codefendants, and one Oscar Brenhaug. Brenhaug was then also under indictment for these offenses, but the indictments were later set aside as to him.

In his application, Bates alleged that the transcriptions were not accurate. At the first district court hearing Chavez orally adopted this allegation as an amendment to his application. Amplifying this allegation, counsel for appellants told the district court at the first hearing that they had informed the state trial judge that the recordings were completely unintelligible and that there were glaring discrepancies between the recordings and the transcripts. According to the statement appellants' counsel made to the district court, the state trial judge declined to listen to the recordings and permitted the transcripts to be read to the jury.

These representations having been made to the district court at the first hearing, that court nevertheless declined to listen to the recordings and compare them with the transcribed statements. We held that this was error. Remanding for further proceedings we stated:

"At such further hearing the tape recordings should be called for and listened to, and the trial court proceedings relative to the use of the transcribed statements should also be examined. The fact that parts of the recordings may be unintelligible and were therefore not included in the transcribed statement would not constitute a denial of due process unless it is apparent that substantial prejudice resulted therefrom. But a material variance between intelligible portions of the recordings and the transcribed statements substantially prejudicing appellants would require federal relief, provided that the point was properly raised and preserved at the trial."

At the second district court hearing, following this remand, the district court read the Hernandez and Brenhaug statements while listening to the tape recordings of those conversations. The tape recordings and transcripts were later received as exhibits. All portions of the state trial court record having to do with the introduction of the transcripts and the state trial court's rulings thereon were also specifically called to the district court's attention and examined.

In a written opinion thereafter filed, the district court made the following statement:

"In the main the transcribed statements appeared to be accurate as to material matters. We found no material variances from the recordings, certainly no gross variances, and certainly nothing even remotely approaching a failure of constitutional due process. * * *

"There is not the slightest merit to the contention that there was a failure of due process in any way with respect to the transcriptions."

On the basis of this finding and conclusion the district court rejected the contention that the application should be granted because the transcripts were not accurate representations of the recorded conversations.

On this second appeal, appellants contest this conclusion and the findings upon which it was based. They argue that the district court erred in: (1) failing to find that the Hernandez tape was unintelligible and in finding that there was no material variance between it and the Hernandez transcription; (2) failing to find that there was matter on the Brenhaug tape which was not transcribed; (3) refusing to hear evidence in connection with the authenticity of the tape recording; and (4) preventing appellants from referring to the prosecutor's use, on closing argument, of the transcribed statements.

Concerning both the Hernandez and Brenhaug statements, the state presents some preliminary matters which raise the question of whether we can reach the

merits of appellants' points summarized above.

One of these is that, in the state trial court, neither appellant made any objection to the reading of the Brenhaug statement on the ground that there were substantial variances between it and the tape recording.

■ Although the state did not raise this point on the prior appeal it may do so now, since it presents a jurisdictional question. If neither appellant made such an objection during the state court trial, and if such failure is inexcusable, state remedies were not exhausted and, under 28 U.S.C.A. § 2254, the district court was without jurisdiction to entertain the applications.

Before either the Brenhaug or the Chavez statements were read to the jury, counsel for appellants were afforded an opportunity to listen to the recordings outside of the court room, and to follow them on the transcribed statements. When the state thereafter asked Officer Tidyman to read the Hernandez statement, counsel for appellants objected on several grounds, one being that the Hernandez transcript was not a true and correct record of the taped conversation. This objection was not framed in such a way that it could be held to apply also to the Brenhaug transcript.

At a later point in the trial when the state asked Tidyman to read the Brenhaug statement, objections of counsel were to the effect that the statement was not the best evidence, that it was not proper impeachment, that it was not an accusatory statement as to Chavez, and that the witness had no independent rec-ollection of the conversation. There was no objection on the ground that the transcript was not an accurate reflection of the tape recording,[2] nor has any excuse been offered why this objection was not made.

■ We accordingly hold that appellants did not exhaust their state remedies with regard to the asserted inaccuracy of the Brenhaug statement and and the district court was therefore without jurisdiction to consider this ground for granting the application.[3]

■ The state also points out, on the question of exhaustion of state remedies, that Chavez did not raise the question of the accuracy of the Hernandez transcription in his petition to the United States Supreme Court for certiorari, following the decision of the California Supreme Court affirming his conviction and sentence. The rule thus sought to be invoked, as established in Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761, and recently applied by this court in Duncan v. Carter, 9 Cir., 299 F.2d 179, is that, absent special circumstances, failure to petition for a writ of certiorari with respect to a particular contention precludes district court consideration thereof in a subsequent habeas corpus proceeding.

In our opinion, special circumstances exist here which render inapplicable the requirement, as to Chavez, that this particular point must have been raised in the petition for a writ of certiorari. Chavez and Bates had been tried together and their appeals had been consolidated for argument and disposition in the Supreme Court of California. Both

---

2. It may be that the reason no objection of this kind was made is that Tidyman made it clear in his testimony that the Brenhaug statement consisted partly of a transcript of the recording, and partly of his dictated recollection of the conversion made at a time when the conversation was in his recollection.

3. Considering the possibility that we may be held to be in error in so concluding, we have listened to the Brenhaug tape recording, following it on the Brenhaug transcript. We are of the view that most of the tape recording is intelligible and that the transcript, with substantial accuracy, reflects the intelligible part. To a minor extent the transcript contains statements not intelligible on the tape, this no doubt being the result of Tidyman's dictated supplementation. Even if it be assumed that Tidyman's recollection may have been faulty as to these additions, they were not, in our view, of such a nature that substantial prejudice to appellants could have resulted.

raised the point in the Supreme Court of California and Bates raised it in his petition for a writ of certiorari.

 While the two petitions were disposed of in separate orders several months apart, they must have been pending at the same time or very nearly the same time. As between Chavez and Bates there are no distinguishing features which could have resulted in a holding one way as to Bates and another way as to Chavez. Thus the denial as to Bates indicates that in all probability it would have been denied as to Chavez, had the point been raised.

Where an applicant for a writ of habeas corpus raised a particular point in one petition for certiorari, but failed to raise it in a subsequent petition, we have held that special circumstances existed excusing the subsequent deficiency. See Daugharty v. Gladden, 9 Cir., 257 F.2d 750, 756. By analogy we think Chavez' failure to raise the point in his petition, pending at about the same time as that of his co-defendant wherein the point was raised, constitutes a special circumstance excusing Chavez' failure to present the matter in his petition.

A second preliminary point raised by the state with regard to the Hernandez statement and recording is that since the jury was expressly instructed to consider the Hernandez statement only as against Hernandez, and not as against either Chavez or Bates, the use of that statement raises no federal question as to either Chavez or Bates.

On the prior appeal appellants advanced two reasons why use of the Hernandez statement deprived them of due process. The first of these was that, apart from the question of accuracy, the statement, while admissible in part as to Hernandez as an admission was in the main accusatory of Chavez and Bates at a time when they were not present and therefore, despite the instruction that it be considered only as to Hernandez, was prejudicial as to Chavez and Bates. We held, however, that since this particular reason raised no question concerning a federally-significant external event, the state court ruling that the statement was admissible as to Hernandez was not subject to review in the federal proceeding. We further ruled that the fact that Chavez and Bates may have been prejudiced by evidence properly admissible as to Hernandez presented no federal due process question.

The second reason advanced by appellants on the prior appeal why the use of the Hernandez statement deprived them of due process was the same one they advance on this second appeal—the Hernandez statement was not an accurate representation of the recorded conversation.

Since this contention did bring into question the facts concerning an external event (the accuracy of the transcripts) we held, in effect, that the federal court was not bound by the state court ruling on this objection to the statement. It was also our view that if this statement was grossly inaccurate, the question of whether the appellants were substantially prejudiced by its use should be inquired into despite the fact that the jury was instructed that the statement was not to be considered as against Chavez and Bates. Accordingly we directed the district court, on remand, to inquire both as to the accuracy of the statement and the prejudice resulting from its use.

 The state is therefore, in effect, asking us to now reconsider the views expressed and directions given on our prior appeal. Bearing in mind the fact that we limited the indicated inquiry to the objection that the statement was substantially inaccurate, we adhere to the view previously expressed. If the statement was substantially inaccurate it was not only inadmissible as to any defendant, including Hernandez, but the defect may have been so grievous that the jury instruction to disregard it as to Chavez and Bates ought not to be considered conclusive on the question of substantial prejudice.

This brings us to appellants' argument on the merits with reference to the use of the Hernandez statement. First, appellants argue, the statement, quoted above,

made by the district court in disposing of this matter, does not constitute specific findings of fact. They contend that the words "in the main," "material matters" and "material variances" as used therein without definition or explanation are "merely conclusions of law."

The district court was directed to ascertain whether there was a variance between intelligible portions of the recording and the transcribed statement of sufficient materiality to prejudice appellants. This presented a mixed question of fact and law and the district court's statement was sufficiently explicit to advise us as to its views on both features of the question.

Having determined that such variance as there may have been between intelligible portions of the recording and the transcribed statement were not "material" in the sense that appellants were prejudiced, the district court was not required to set out what it regarded as immaterial variances. Rather, the burden was placed upon appellants to demonstrate on this appeal that there were material variances of this kind.

Appellants' counsel have had access to the statements and tape recordings, but have not called our attention to a single instance, material or otherwise, in which the tape recording indicates that one statement was made while the transcript reports that a different statement was made. Nor do they call attention to any specific statement in the transcript which is unsupported by an intelligible portion of the tape.

Instead, appellants have been content to quote excerpts from statements made in the second district court hearing in which attorneys, Officer Tidyman and the district court expressed opinions as to the difficulty of understanding the tape. Appellants also ask us to listen to the tape recording and ascertain for our-

selves whether there is a material variance.

We have done so, having before us at the time the transcribed Hernandez statement. Based thereon, we conclude that such variances as there were between the transcript and the intelligible portions of the tape recording, were of a minor nature and did not prejudice appellants.

There are places in the tape recording that are so unintelligible that no effort was made to report them in the transcript. But Officer Tidyman testified before the jury that there were certain portions of the tape recording that could not be heard. Moreover, the places where the tape was unintelligible were so indicated in the transcribed statement. As Tidyman read the statement to the jury he repeated each such indication. The jury was therefore fully aware of the fact that the statement did not purport to be a word-for-word transcription of all that was said during the recorded conversation.

The transcript was not offered as an independent exhibit but as a memorandum prepared to refresh the recollection of Tidyman as to a conversation which he actually heard.[4] Tidyman was subjected to unrestricted voir dire examination concerning the conversation and the transcribing of the tape recording. He was also subjected to cross examination. In addition, appellants were advised that they could play the tape recording to the jury, but they chose not to do so.

Had Tidyman attempted to orally testify concerning this conversation, depending upon his recollection, the fact that he was unable to repeat the conversation word for word, or was unable to recollect the substance of all of it, would present no due process question. By analogy, we think the same must be said

4. While Tidyman had no independent recollection of the conversation at the time of the state court trial, the trial judge ruled, on the authority of People v. Vera, 131 Cal.App.2d 669, 281 P.2d 65, that the statement could nevertheless be read to the jury. This ruling on the admissibility of evidence in a state court trial is not subject to review here.

concerning a transcribed statement used to refresh witnesses' recollection of a conversation, where the jury is made aware of the fact that certain unintelligible portions of the tape were not transcribed.

Appellants also argue that the district court erred in refusing to receive evidence at the second hearing bearing on the authenticity of the Hernandez tape recording.

A deputy county clerk identified the Hernandez tape recording as the one which had been introduced as an exhibit at the state court trial. Tidyman testified that he had nothing to do with the tape after it was introduced as an exhibit at the state court trial. Counsel for appellants sought to question him as to the custody of the tape after the conversation and prior to the trial and whether he could testify that it was not tampered with prior to the state trial. The district judge sustained objections to this line of questions.

 No allegation that the tape was tampered with prior to the trial was made in the applications for writs of habeas corpus nor was such a contention advanced on the prior appeal to this court. In remanding the cause we did not ask the district court to look into the matter. Hence the issue was not before the district court on our remand.

Counsel for appellants do not represent that they have come into possession of information indicating that the tapes were tampered with prior to the state trial. Hence they were not in a position to raise this as a new point on the theory of amending the applications, and they did not do so. Under these circumstances this line of questioning was not material to any issue before the district court, and that court did not err in sustaining the objections to these questions.

Appellants' final argument with regard to the recording of the Hernandez transcription is that at the second hearing the district court prevented appellants from referring to the prosecutor's use of that statement during his closing argument to the jury.

Appellants do not refer us to any record reference tending to support this assertion as to what happened in the district court. In its answering brief the state calls attention to several places in the record where the district judge inquired whether counsel desired to call attention to any other parts of the state court record. Appellants' reply brief is silent on the point.

 This argument of appellants therefore seems to rest on a faulty factual premise. In any event, having held that the Hernandez statement was substantially accurate, the fact that the prosecutor made use of it before the jury would be immaterial to any issue in these habeas corpus proceedings.

Appellants' second main point on this appeal is that the district court erred in failing to find and conclude that the erroneous introduction of assertedly gruesome photographs during the state court trial constituted a denial of due process.

This problem was dealt with at considerable length in our prior decision. The facts there recited and views there expressed need not be repeated. See 280 F.2d 727, at 738–739. We directed that, on the remand, the district court should examine the photographs made away from the premises for the purpose of determining whether their introduction, which the California Supreme Court ruled was erroneous, has deprived appellants of due process.

The district court found, after examining these photographs, that one was of a similar kind to two photographs taken inside the premises which the court had characterized as gruesome. The court concluded, however, that the introduction of this gruesome photograph taken off the premises did not deprive appellants of due process.

Having examined all of the photographs we are of the view that none of those taken off of the premises is as gruesome as one taken inside the premises. The latter photograph was held

admissible by the Supreme Court of California on the ground that its probative value as to relevant issues in the case outweighed possible prejudice resulting from its tendency to arouse the passions of the jury.

The photographs taken off of the premises being, in our opinion, less gruesome than the properly-admitted one taken inside, introduction of the outside photographs did not add appreciably to the prejudice appellants had already sustained. We agree with the trial court that in the matter of the reception of photographs, appellants were not deprived of due process.

Finally, appellants argue, they were denied due process of law by California's construction of Penal Code section 189, 447a, and 448a. This same argument was made on the prior appeal and found to be without merit. We adhere to the views there expressed.

Affirmed.